UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY HARRIS,     ) | |
|    Plaintiff,     ) | |
| ) | |
| vs.     ) | Case No. 23-1047 |
| ) | |
| DANIEL ROGER, *et al.*,     ) | |
|    Defendants.     ) | |

### MERIT REVIEW ORDER – AMENDED COMPLAINT

Plaintiff, an inmate at Illinois River Correctional Center ("Illinois River"), has filed an Amended Complaint under 42 U.S.C. § 1983 alleging that Illinois Department of Corrections ("IDOC") Director Rob Jeffreys, Deputy Director Hammers, Warden Chyrle Hinthorne, Assistant Warden Bordner, former Warden Tiffany Clark, and Commissary Supervisors Bucco and Greg Morrill violated his constitutional rights.

The Court is required by 28 U.S.C. § 1915A to "screen" the complaint, and through such process, to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted).

1

While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff first notes Illinois River is classified as a medium security facility. Plaintiff alleges Defendants Jeffreys, Hinthorne, Bordner, and Clark violated his Fourteenth Amendment rights to equal protection by subjecting him to harsher restrictions than inmates at other similar facilities face. For instance, Plaintiff alleges he is locked in his cell for 21 hours a day and does not receive equal access to programs, jobs, the yard, gym, and dayroom as inmates at other prisons, such as Graham and Centralia.

Plaintiff states he wrote letters to Defendants Jeffreys and Hinthorne asking why he was being treated more harshly while housed at Illinois River, but he did not receive a response. He also submitted grievances, which were denied.

District courts considering similar allegations have noted "there is no guarantee that Plaintiff will receive the exact same privileges as an inmate at any other state facility, regardless of what 'level' that institution has been classified." *Sultan v. Hodge*, 2013 WL 1890642, at *6 (S.D. Ill. May 3, 2013). Plaintiff does not claim he was singled out for harsher treatment at Illinois River, and a "prison does not cross the line to an equal protection violation merely by having different rules than its counterpart institutions." *Id.*; *see also Johnson v. Godinez*, 2012 WL 3926184, at *2 (S.D. Ill. Sept 7, 2012) ("Plaintiff's argument, that Lawrence is not providing the same privileges and amenities as other level-two prisons, does not state a violation of equal protection.").

In addition, "prisoners possess neither liberty nor property [interests] in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). Plaintiff has not stated a violation of his equal protection rights.

Plaintiff also claims that Defendant Hinthorne's "ice policy" is discriminatory and violates his equal protection rights. (Doc. 11 at 12-13). He states that before the level-system was implemented, ice was available for medium security prisoners at all facilities. Plaintiff claims that the ice bucket only holds 32 scoops of ice and, as a result, the 52 inmates housed on Plaintiff's wing do not all receive access to ice during each shift. Plaintiff alleges the ice shortage could create conflict among the inmates.

Plaintiff did not articulate why he needed ice, nor did he claim that he was singled out for harsher treatment. Plaintiff has not articulated a constitutional violation based on the limited availability of ice. *See Hulse v. Martoccia*, 2019 WL 3840319, at 2 (S.D. Ind. Aug. 15, 2019) (finding that deprivation of ice was not cruel and unusual punishment, particularly in an air-conditioned cell block where ice was not needed to cope with excessive heat).

Next, Plaintiff claims that when inmates tested positive for Covid, he was only allowed to spend $75 per week at the commissary during medical lockdowns instead of $150 because of a discriminatory policy implemented by Defendants Commissary Supervisors Bucco and Morrill. (Doc. 11 at 14). Plaintiff claims the "lax Commissary staff did not want to do their required job," and Defendants Hinthorne, Bordner, and Clark

3

"turned a blind eye to the lax commissary schedule." *Id.* at 15. Plaintiff claims that Defendants Hinthorne, Bordner, Clark, Morrill, and Bucco violated his constitutional rights by treating him differently than other A-Grade inmates at medium security facilities who are allowed to spend $150 per week at the commissary.

Plaintiff, who was diagnosed with cancer, alleges that he experienced physical pain and suffering because he was not able to supplement his diet at the commissary during long lockdowns. Plaintiff alleges that the food served at the Prisoner Dietary Hall was brought to him on a Styrofoam tray while he was housed in the infirmary. Plaintiff states the meals were cold, terrible, "and many times to[o] far gone to eat." *Id.* at 16. Plaintiff claims he depended on his A-Grade weekly shop to supplement his diet, replace the weight he lost, and maintain his strength while fighting cancer.

Plaintiff has not articulated a constitutional violation based the alleged policy to limit the amount of money inmates are allowed spend each week at the commissary during medical lockdowns. "Because inmates' basic necessities are furnished by the State, they have no protected interest in making commissary purchases." *Animashaun v. Keefe Commissary Network*, 2013 WL 3321863, at *1 (N.D. Ill. June 28, 2013); *see also Warren v. IDOC*, 2021 WL 5998374, at *4 (S.D. Ill. Dec. 20, 2021) (the specific restrictions implemented during a Covid lockdown did not involve "liberty interests protected by the Fourteenth Amendment").

Plaintiff's Amended Complaint is therefore DISMISSED WITH PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Amended Complaint [11] is dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Any amendment would be futile because Plaintiff cannot allege a cognizable claim under § 1983 on these facts. This case is therefore closed. The Clerk is directed to enter a judgment pursuant to Fed. R. Civ. P. 58.

2. This dismissal may count as one of Plaintiff's three allotted strikes pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is directed to record Plaintiff's strike in the three-strike log.

3. If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* MUST identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (stating that an appellant should be allowed to submit a statement of the grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith"); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED: 9/25/2023

s/ James E. Shadid  
James E. Shadid  
United States District Judge

5